IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THE MEDICINES COMPANY,

               Plaintiff,

    v.

TEVA PARENTERAL MEDICINES, INC., et al.,

               Defendants.

C.A. No. 09-750-ER
**(Consolidated)**

**REDACTED PUBLIC VERSION**

**DEFENDANTS APP PHARMACEUTICALS, LLC AND APP PHARMACEUTICALS, INC.'S RESPONSE TO PLAINTIFF THE MEDICINES COMPANY'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION DENYING THE MEDICINES COMPANY'S MOTION TO DISMISS, STRIKE OR ALTERNATIVELY BIFURCATE APP'S ALLEGATIONS OF INEQUITABLE CONDUCT AND UNCLEAN HANDS**

OF COUNSEL
MORRISON & FOERSTER LLP
Emily A. Evans (*pro hac vice*)
Eric C. Pai (*pro hac vice*)
Christopher Robinson (*pro hac vice*)
Cecilia Ziniti (*pro hac vice*)
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600
eevans@mofo.com
epai@mofo.com
christopherrobinson@mofo.com
cziniti@mofo.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
enorman@ycst.com
msquire@ycst.com

*Attorneys for Defendants and Counterclaim Plaintiffs APP Pharmaceuticals, LLC and APP Pharmaceuticals, Inc.*

Dated: September 30, 2011

Redacted Version:  October 7, 2011

## INTRODUCTION

Defendants APP Pharmaceuticals, LLC and APP Pharmaceuticals, Inc. ("APP") hereby respond to Plaintiff The Medicines Company's ("MedCo") Objections to the Special Master's Report and Recommendation Denying MedCo's Motion to Dismiss, Strike, or Bifurcate APP's Inequitable Conduct and Unclean Hands Allegations (D.I. 600).

MedCo's objections are a waste of the Court's and APP's resources. This is the third time that MedCo has asked the Court to examine the legal sufficiency of APP's amended pleadings under the 12(b)(6) motion to dismiss standard. The Special Master wrote two detailed reports and recommendations totaling over 100 pages in connection with APP's motion to amend, and concluded "that APP's proposed amendments would survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (D.I. 298 at 25; D.I. 444 at 32; *see also* D.I. 592 at 6.) The Court reviewed both reports and recommendations, along with two sets of objections by MedCo, and two sets of responses by APP, as well as supplemental letters submitted to the Court by MedCo—and agreed that APP's amended pleadings were legally sufficient. (*See* D.I. 494.)

Three weeks later, MedCo filed the instant motion to dismiss raising the identical issues that the Court had previously reviewed and rejected in connection with APP's motion to amend. The Special Master disposed of MedCo's motion to dismiss under the law of the case doctrine. (D.I. 592 at 18-19, 20-21.) The Court should follow the same approach, as there are no "extraordinary circumstances" that would justify reconsideration of the Court's prior ruling.

MedCo has been litigating the same meritless issues for over six months now, and has resorted to outright misrepresentations in an attempt to derail APP's inequitable conduct and unclean hands defenses and counterclaims. This should end now.

## BACKGROUND

APP set forth in its opposition to MedCo's motion to dismiss the lengthy history of MedCo's campaign to challenge the legal sufficiency of APP's amended pleadings. (D.I. 548 at 2-4.) Over a six-month period, MedCo has filed no fewer than fourteen papers with the Court in connection with APP's motion to amend and MedCo's motion to dismiss. (D.I. 191, D.I. 266, D.I. 270, D.I. 271, D.I. 321, May 26th ltr, D.I. 451, D.I. 526, D.I. 527, D.I. 535, D.I. 553, D.I. 573, D.I. 577; D.I. 600.) Most of these papers were filed after MedCo had notice that its positions were baseless.

After MedCo filed the instant motion to dismiss, APP asked the Court to dismiss the motion *sua sponte* as frivolous. (D.I. 533 at 1.) MedCo defeated that request by representing that its motion raised new issues regarding the materiality of APP's inequitable conduct arguments.

> We feel compelled . . . to respond to APP's repeated allegations that the Motion to Dismiss raises nothing new and addresses only issues that have been adjudicated. This is clearly not the case. . . . The Medicines Company's brief raises . . . arguments concerning the "how" and "why" requirements of *Exergen* and APP's failure to meet them . . . .

(D.I. 535 at 1-2; *see also* D.I. 527 at 12.)  The Court relied upon that representation in denying APP's request for *sua sponte* dismissal of the motion.  (*See* D.I. 536 at 2 & n.1.)  MedCo makes the same representation to the Court in its present filing:

> Even accepting all the factual allegations in APP's amended answers as true, the pleadings contain contradictory factual allegations concerning materiality. . . . The Court's prior ruling approving APP's inequitable conduct counterclaims did not consider this new evidence . . . .

(*See* D.I. 600 at 2-3.)  MedCo goes so far as to state that "[t]he Special Master recognized that these arguments concerning materiality were new arguments that were not previously raised in connection with APP's motion to amend."  (*Id.* at 3, n.3.)

These statements grossly mischaracterize the parties' prior submissions to the Court, the Special Master's reports, and the Court's orders.  <u>MedCo briefed the materiality issue twice before the Court.</u>  (*See* D.I. 321 at 4 and D.I. 451 at 3-4.)  Although the Special Master was apparently unaware of this fact when he denied APP's request for *sua sponte* dismissal (D.I. 536 at 2), the Special Master <u>corrected himself</u> in his report:

> MedCo asserts in its Opening Brief that "none of APP's three theories of inequitable conduct plead the requisite 'why' or 'how' the allegedly withheld information is material."  While MedCo did not raise this argument in its opposition to APP's Motion for Leave, MedCo did raise it (although less fulsomely than in its Opening Brief) in its objections to the Original and Amended Reports. . . . [T]he Court has already considered and rejected this position that MedCo now advances in support of its Motion.

(D.I. 592 at 15 (citations omitted).)  This passage directly contradicts MedCo's representation that its present filing raises new issues regarding the materiality of APP's inequitable conduct allegations; yet MedCo chose not to bring this passage to the Court's attention.

## ARGUMENT

### I.   THE SPECIAL MASTER CORRECTLY HELD THAT THE LAW OF THE CASE DOCTRINE PRECLUDES MEDCO'S MOTION TO DISMISS

The Special Master correctly analyzed MedCo's motion under the law of the case doctrine, and correctly found that no "extraordinary circumstances" warrant re-litigating the legal sufficiency of APP's amended pleadings in view of the Court's July 19 Order granting APP's motion for leave to amend.

"The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation."  *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).  "Because it prevents courts from entertaining endless appeals on the same issue, the doctrine promotes finality and judicial economy."  *Id.*  The Supreme Court has emphasized that "courts should be loath to [revisit prior decisions] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'"  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).  The Third Circuit "has recognized several 'extraordinary circumstances' that

warrant a court's reconsideration of an issue decided earlier in the course of litigation. They include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Pub. Interest Research Group of N.J.*, 123 F.3d at 116-117.

MedCo raises only two arguments for why the Court should reconsider its July 19 Order permitting APP's amended pleadings. First, MedCo contends that the Court must consider "new evidence" regarding APP's inequitable conduct allegations. (D.I. 600 at 3) Second, MedCo contends that the Special Master clearly erred by "fail[ing] to properly consider the clear holding of the *Gabapentin* case." (*Id.*) As discussed below, both arguments have no merit.

### A.   MedCo's Stale Argument Concerning APP's Inequitable Conduct Allegations Is Not "New Evidence" Under the Law of the Case

MedCo has not identified any "new evidence" since the July 19 Order permitted APP's amended pleadings. Indeed, it is hard to imagine what "new evidence" might exist. The exact same pleadings at issue in connection with APP's motion to amend are at issue here in connection with MedCo's motion to dismiss. As the Special Master aptly put it, "that MedCo found new ways to phrase old arguments does not constitute 'new evidence.'" (D.I. 592 at 19.)

Unable to meet the requirements for reconsideration under the law of the case doctrine, MedCo resorts to mischaracterizations of APP's allegations and argues the underlying merits based on those mischaracterizations. APP's three alleged theories of inequitable conduct amply support an inference of deceptive intent:

1.  APP alleged that the inventors secured the patents-in-suit by repeatedly stating to the Patent Office that they had invented a "new" process for making pharmaceutical batches of a drug product that (1) differed from an "old" process known in the prior art, and (2) resulted in patentably distinct pharmaceutical batches. (D.I. 500 ¶¶ 90-106; D.I. 501 ¶¶ 89-105.) As the inventors knew, however, the so-called new process did not differ substantially from the old process, and produced the same drug product. For example, the inventors represented in the patents-in-suit that the old process added the pH-adjusting solution at an important formulation step "either all at once, or rapidly in multiple portions," whereas the new process added it "using a peristaltic pump." (D.I. 500 ¶¶ 96, 100; D.I. 501 ¶¶ 95, 99.) In truth, however, ███████████ ████████████████████████████ (D.I. 500 ¶ 112; D.I. 501 ¶ 111.) As another example, the inventors represented in the patents-in-suit that the old process used mixing speeds of "between about 400 and about 800 rpm," whereas the new process used mixing speeds of "between about 1000 rpm and 1300 rpm." In truth, however, ████████ ███████ D.I. 500 ¶ 112-113; D.I. 501 ¶ 111-112.) These misrepresentations went to the heart of the inventors' argument to the Patent Office that the "old" differed from the "new." (D.I. 500 ¶¶ 113-116; D.I. 501 ¶¶ 112-115.) There is nothing contradictory about APP's allegations.

2.  Not only did the inventors knowingly misrepresent the differences between the "old" and "new" processes, they also knowingly misrepresented the differences between the batches made by these processes. In the patents-in-suit, the inventors

represented that batches made by the "old" process had maximum $Asp^9$-bivalirudin levels of 3.6%, maximum total impurity levels of 3.0%, and maximum reconstitution times of 72 seconds. (D.I. 500 ¶ 97; D.I. 501 ¶ 96.) The inventors contrasted these results with the characteristics of batches made by the "new" process, which they represented <u>always</u> had maximum $Asp^9$-bivalirudin impurity levels of 0.6%, maximum total impurities of 2.0%, and maximum reconstitution times of 42 seconds. (D.I. 500 ¶¶ 101-104; D.I. 501 ¶¶ 100-103.) In truth, however, ████████████████████████████████████████████████████████████ ██████████████████ (D.I. 500 ¶ 121; D.I. 501 ¶ 120.) For example, ████████████████████████████████████████████████████████████ ████████████████████ (*Id.*) These misrepresentations directly contradicted the inventors' arguments for patentability. (D.I. 500 ¶¶ 122-125; D.I. 501 ¶¶ 121-124.) Again, there is nothing contradictory about APP's allegations.

3.  The named inventors also knowingly misrepresented under penalty of perjury that they were the original and joint inventors of their so-called invention, while actively concealing that the essential features of their alleged "new" process had been transmitted to them by ██████████████████████████ (D.I. 500 ¶¶ 126-133; D.I. 501 ¶¶ 125-132.) These features included ██████████████████ ████████████████████████████████████████████████████████████

    *i.e.*, the same features the inventors described as comprising their "new" process. (D.I. 500 ¶ 128; D.I. 501 ¶ 127.) APP properly alleged that the Patent Office would have rejected the claims of the patents-in-suit had it known that the inventors derived their invention from another and/or claimed an obvious variation of another's prior work. The fact that neither ██████████████ █████████ nor the inventors could make the "new" process work as represented in the patents-in-suit does not preclude an inference of deceptive intent. If anything, it strengthens that inference. The inventors should have disclosed that their "invention" did not work. (D.I. 500 ¶¶ 117-125; D.I. 501 ¶¶ 116-124.)

MedCo's attempt to confuse the issues by distorting APP's allegations and omitting crucial facts should not be countenanced by this Court. APP's allegations are legally sufficient.

**B.    The Special Master's Ruling Regarding Unclean Hands Was Not Clearly Erroneous Because He Expressly Distinguished the *Gabapentin* Case**

MedCo contends that the Special Master clearly erred by "fail[ing] to properly consider the clear holding of the *Gabapentin* case" and "refus[ing] to dismiss APP's unclean hands counterclaims." (D.I. 600 at 3.) MedCo is silent as to whether this alleged failure would result in "manifest injustice," as required under the "clear error" prong of the law of the case doctrine. And MedCo once again conceals from the Court essential information. Medco chose not to inform the Court that the Special Master <u>expressly distinguished</u> *Gabapentin* in ruling that the law of the case doctrine applied to APP's unclean hands counterclaim.

The Third Circuit has explained that the doctrine of unclean hands concerns the courts' "own integrity." *Gaudiosi v. Mellon*, 269 F.2d 873, 881 (3d Cir. 1959). The court "is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of

discretion" when considering the equitable doctrine of unclean hands.  *Id.* at 881.  *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008), is an example of that discretion in the analogous context of equitable implied waivers.  Eschewing rigid rules, the Federal Circuit crafted an equitable remedy rendering the patents-in-suit unenforceable in the future as to a class of products impacted by the misconduct there, after reversing an unlimited declaration of unenforceability as to the whole world.

MedCo's citation to *Gabapentin/Aptix* does not acknowledge that the conduct there did not taint the underlying rights being asserted.  By contrast, as acknowledged by the Special Master, MedCo's misconduct here taints its right to sue under the Hatch-Waxman Act based on its listing of the '727 and '343 patents in the Orange Book.  The Special Master thus found *Qualcomm* apposite and persuasive in this context.  The Special Master recognized that the Court has broad equitable powers that may be tailored to address MedCo's specific misconduct—*viz.*, acquiring the right to sue third-party ANDA filers by improperly listing the patents-in-suit in the Orange Book.  At this early stage, the Court's remedy should not be limited to dismissal of the action, as it was in *Gabapentin* and *Aptix*. MedCo's misconduct in connection with its Orange Book listings tainted its right to bring a class of lawsuits, analogous to the class of accused products infected by the misconduct in *Qualcomm*.  As recognized by the Special Master, the proper scope of the equitable relief ultimately fashioned by the Court "is a question appropriately left for another day."  (D.I. 592 at 22.)  MedCo's representation that the Special Master ignored *Gabapentin* is simply not true.

## **CONCLUSION**

For the reasons discussed above, this Court should affirm in its entirety the Special Master's Report and Recommendations regarding MedCo's motion to dismiss or strike.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Elena C. Norman*
Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302)571-5029
Facsimile:  (302)571-1253
enorman@ycst.com
msquire@ycst.com

*Attorneys for Defendants and
Counterclaim Plaintiffs APP
Pharmaceuticals, LLC and APP
Pharmaceuticals, Inc.*

OF COUNSEL:

MORRISON & FOERSTER LLP

Emily A. Evans (*pro hac vice*)
Eric C. Pai (*pro hac vice)*
Christopher Robinson (*pro hac vice*)
Cecilia Ziniti (*pro hac vice*)
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone:  (650) 813-5600
Facsimile:  (650) 494-0792
eevans@mofo.com
epai@mofo.com
christopherrobinson@mofo.com
cziniti@mofo.com

Dated: September 30, 2011

## CERTIFICATE OF SERVICE

I, Monté T. Squire, Esquire, hereby certify that on October 7, 2011, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Frederick L. Cottrell, III, Esquire
> Laura D. Hatcher, Esquire
> Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 North King Street
> Wilmington, DE 19801
> *cottrell@rlf.com*
> *hatcher@rlf.com*
>
> *Attorneys for Plaintiff*
>
> John C. Phillips, Jr. , Esquire
> Megan C. Haney, Esquire
> Phillips Goldman & Spence, P.A.
> 1200 North Broom Street
> Wilmington, DE 19806
> *jcp@pgslaw.com*
> *mch@pgslaw.com*
>
> *Attorneys for Defendants Teva Parenteral*
> *Medicines Inc., Teva Pharmaceuticals Industries Ltd.,*
> *PLIVA d.d., PLIVA-HRVATSKA d.o.o., Teva*
> *Pharmaceuticals USA, Inc. and Barr Laboratories, Inc.*
>
> Richard K. Herrmann, Esquire
> Morris James, LLP
> 500 Delaware Avenue, Suite 1500
> P.O. Box 2306
> Wilmington, DE 19899-2306
> *rherrmann@morrisjames.com*
>
> *Attorneys for Defendant Hospira Inc.*

I further certify that on October 7, 2011, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record, and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

Edgar H. Haug, Esquire
Porter F. Fleming, Esquire
Angus Chen, Esquire
Mark P. Walters, Esquire
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY  10151
*ehaug@flhlaw.com*
*pfleming@flhlaw.com*
*achen@flhlaw.com*
*mwalters@flhlaw.com*

*Attorneys for Plaintiff*

George C. Lombardi, Esquire
Lynn MacDonald Ulrich, Esquire
Trang Hoang, Esquire
Julia Mano Johnson, Esquire
Maureen Rurka, Esquire
Ivan M. Poullaos, Esquire
Christopher B. Essig, Esquire
Sara E. Gilloon, Esquire
Samantha L. Maxfield, Esquire
Winston Strawn LLP
35 W. Wacker Drive
Chicago, IL  60601-9703
*glombardi@winston.com*
*lulrich@winston.com*
*thoang@winston.com*
*jmjohnson@winston.com*
*mrurka@winston.com*
*ipoullaos@winston.com*
*cessig@winston.com*
*sgilloon@winston.com*
*smaxfield@winston.com*
*Attorneys for Defendants Teva Parenteral*
*Medicines Inc., Teva Pharmaceuticals Industries Ltd.,*
*PLIVA d.d., PLIVA-HRVATSKA d.o.o., Teva*

*Pharmaceuticals USA, Inc. and Barr Laboratories, Inc.,*
*Barr Pharmaceuticals LLC*


William F. Long, Esquire
Kristin E. Goran, Esquire
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, GA  30309-3996
*bill.long@sutherland.com*
*kristin.goran@sutherland.com*

*Attorneys for Defendant Hospira Inc.*

                    YOUNG CONAWAY STARGATT
                     &  TAYLOR, LLP

                    /s/ *Monté T. Squire*
                    Elena C. Norman (No. 4780)
                    Monté T. Squire (No. 4764)
                    The Brandywine Building
                    1000 West Street, 17th Floor
                    Wilmington, Delaware  19801
                    (302) 571-6600
                    *enorman@ycst.com*
                    *msquire@ycst.com*


                    *Attorneys for Defendants APP Pharmaceuticals,*
                    *Inc. and APP Pharmaceuticals LLC*

Dated: October 7, 2011

01: 10406771.1

068907.1001