## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE MEDICINES COMPANY,

        Plaintiff,

        v.

TEVA PARENTERAL MEDICINES, INC.,
TEVA PHARMACEUTICALS USA,
TEVA PHARMACEUTICAL INDUSTRIES,
LTD.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 09-750 (ECR)
(Consolidated)

## PLAINTIFF THE MEDICINES COMPANY'S
## OPENING CLAIM CONSTRUCTION BRIEF ON SUPPLEMENTAL CLAIM TERMS

*Of Counsel:*

Edgar H. Haug
Porter F. Fleming
Angus Chen
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
(212) 588-0800

Dated: October 7, 2011

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Laura D. Hatcher (#5098)
hatcher@rlf.com
Richards, Layton & Finger P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Plaintiff*
*The Medicines Company*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

I.      SUMMARY OF ARGUMENT .....................................................................................1

II.     ARGUMENT ................................................................................................................2

        A.      PROPOSED CONSTRUCTIONS .....................................................................2

                1.      Total impurity level...............................................................................2

                2.      A maximum total impurity level .............................................................3

                3.      About 1% total impurity level................................................................4

                4.      About 2% total impurity level................................................................6

                5.      A maximum total impurity level that does not exceed about
                        1% or 2% as measured by HPLC............................................................6

                6.      Reconstitution time ...............................................................................9

                7.      About 42 seconds reconstitution time......................................................9

III.    CONCLUSION.............................................................................................................10

RLF1 5440282v. 1

# TABLE OF AUTHORITIES

## Cases

*Cohesive Techs., Inc. v. Waters Corp.*,
    543 F.3d 1351 (Fed. Cir. 2008) ................................................................. 4, 9

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005) ........................................................ 5, 6, 7, 10

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001) ...................................................................... 6

*Halliburton Energy Servs. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008) ...................................................................... 5

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) .......................................................................... 3

*Merck & Co. v. Teva Pharms. USA Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005) ...................................................................... 4

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*,
    403 F.3d 1364 (Fed. Cir. 2005) ................................................................... 5, 7

*Pall Corp. v. Micron Separations, Inc.*,
    66 F.3d 1211 (Fed. Cir. 1995) ........................................................................ 4

*Teva Pharm. USA, Inc. v. Sandoz Inc.*,
    No. 08-7611, 2011 U.S. Dist. LEXIS 99056 (S.D.N.Y. Aug. 24, 2011) ........... 7

*UCB, Inc. v. KV Pharm. Co.*,
    No. 08-223, 2009 WL 2524519 (D. Del. Aug. 19, 2009) .................................. 4

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................. 2, 3, 9

## Statutes

35 U.S.C. § 112 ................................................................................................. 8

## I.   SUMMARY OF ARGUMENT

On September 22, 2011, this Court issued an order for Plaintiff The Medicines Company, and Defendants APP Pharmaceuticals, LLC and APP Pharmaceuticals, Inc. (collectively "APP") to file supplemental claim construction briefs directed to seven additional terms in U.S. Patent No. 7,582,727 ("the '727 patent", D.I. 464, Ex. A) and U.S. Patent No. 7,598,343 ("the '343 patent", D.I. 464, Ex. B).  (See September 22, 2011 Order from Special Master Vincent J. Poppiti, D.I. 590; see also Exhibit E to September 1, 2011 Letter from The Medicines Company to Special Master Poppiti, D.I. 563).

The Medicines Company proposes the following constructions, set forth in the table below:

| Term | Proposed Construction |
| --- | --- |
| total impurity level | The combined total of all measureable impurities in the pharmaceutical batch(es) or the pharmaceutical formulation(s). |
| a maximum total impurity level | An upper limit of the combined total of all measureable impurities in the pharmaceutical batch(es) or the pharmaceutical formulation(s). |
| about 1% [total impurity level] | Plain and ordinary meaning.  This term is not indefinite.<br><br>Alternatively:  Approximately 1%. |
| about 2% [total impurity level] | Plain and ordinary meaning.  This term is not indefinite.<br><br>Alternatively:  Approximately 2%. |
| a maximum total impurity level that does not exceed about 1% [or 2%] as measured by HPLC | An upper limit of the combined total of all measureable impurities in the pharmaceutical batch(es) or the pharmaceutical formulation(s) that does not exceed about 1% [or 2%] as measured by HPLC.<br><br>This term is not indefinite. |
| reconstitution time | The time required to prepare the pharmaceutical batch(es) or the pharmaceutical formulation(s) for use. |
| about 42 seconds [reconstitution time] | Plain and ordinary meaning.  This term is not indefinite.<br><br>Alternatively:  Approximately 42 seconds. |

The Medicines Company's proposed constructions comport with well-established rules of patent claim construction and are consistent with the plain and ordinary meaning of the words of the claims themselves, in light of the intrinsic record. The Medicines Company reserves the right to modify its proposed constructions of the supplemental claim terms subject to a review of the Defendants' proposed constructions and any other additional evidence raised.[1]

In the interest of judicial economy, The Medicines Company incorporates herein the Nature and Stage of Proceedings, Statement of Facts and the Law of Claim Construction from The Medicines Company's Opening Claim Construction Brief. (D.I. 461 at 2-9).

## II.   ARGUMENT

### A.   PROPOSED CONSTRUCTIONS

#### 1.   Total impurity level

| Term | Proposed Construction |
|------|----------------------|
| total impurity level | The combined total of all measurable impurities in the pharmaceutical batch(es) or the pharmaceutical formulation(s). |

The term "total impurity level" is expressly defined in the specification (D.I. 464, Ex. A at 12:52-55; Ex. B, D.I. 464, 12:52-55). As a matter of law, the specification "acts as a dictionary" when it defines terms used in the claim. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) (internal citation omitted). In this instance, "total impurity level" is defined in the specification as "the combined total of all measureable impurities in the pharmaceutical batch(es) or the pharmaceutical formulation(s)." (D.I. 464, Ex. A at 12:52-55; D.I. 464, Ex. B at 12:52-55).

---

[1] Despite agreeing to exchange constructions prior to briefing, APP failed to do so while The Medicines Company provided its proposed constructions as agreed upon. (D.I. 563, Ex. D).

As "total impurity level" is defined in the specification, it should be adopted. *Vitronics,* 90 F.3d at 1582. The Court should follow the well-established hierarchy of claim construction sources, looking first to the intrinsic evidence, i.e., the claim terms themselves, the specification, and the file history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996). Where the claim terms can be understood from these sources, and in this case actually defined in the specification, the Court should adopt that interpretation. *Vitronics,* 90 F.3d at 1584. Considered in this framework, the term "total impurity level" should be construed as proposed by The Medicines Company. There is no suggestion in the intrinsic evidence that any meaning should apply other than the express definition in the specification.

### 2.    A maximum total impurity level

| Term | Proposed Construction |
|------|----------------------|
| a maximum total impurity level | An upper limit of the combined total of all measureable impurities in the pharmaceutical batch(es) or the pharmaceutical formulation(s). |

The Medicines Company's proposed construction of "a maximum total impurity level" is consistent with the Federal Circuit's guidelines on claim construction and should be adopted.

As discussed in The Medicines Company's Opening Claim Construction Brief, the first portion of the disputed phrase ("maximum") is unambiguous on its face and is not a technical term of art. The ordinary and customary meaning of the word is readily apparent and the intrinsic evidence does not provide any alternative meanings aside from the ordinary and customary meaning. Alternatively, The Medicines Company proposes a construction for "maximum" of "upper limit." (D.I. 461 at 14-15).

With respect to the remainder of the disputed phrase ("total impurity level"), The Medicines Company's proposed construction is "the combined total of all measureable

impurities in the pharmaceutical batch(es) or the pharmaceutical formulation(s)", *supra* Sec.
II.A.1, as defined in the specification.  (D.I. 464, Ex. A at 12:52-55; D.I. 464, Ex. B at 12:52-55).

Taken together, the proposed construction for "maximum total impurity level" should be
"an upper limit of the combined total of all measureable impurities in the pharmaceutical
batch(es) or the pharmaceutical formulation(s)."  The Medicines Company's proposed
construction is consistent with the intrinsic record.  Further, there is nothing in the intrinsic
evidence that suggests any construction other than this should apply.

### 3.    About 1% total impurity level

| Term | Proposed Construction |
|---|---|
| about 1% [total impurity level] | Plain and ordinary meaning.  This term is not indefinite.<br><br>Alternatively:  Approximately 1%. |

The Medicines Company believes that this claim term should be afforded its plain and
ordinary meaning.  It would be improper to impose a strict numerical boundary in accordance
with controlling legal standards construing claim limitations employing the modifying term
"about."  As reaffirmed by the Federal Circuit and this Court, "the use of the word 'about,'
avoids a strict numerical boundary to the specified parameter."  *Cohesive Techs., Inc. v. Waters
Corp.*, 543 F.3d 1351, 1368 (Fed. Cir. 2008) (quoting *Pall Corp. v. Micron Separations, Inc.*, 66
F.3d 1211, 1217 (Fed. Cir. 1995)); *see also UCB, Inc. v. KV Pharm. Co.*, No. 08-223, 2009 WL
2524519, at *4 (D. Del. Aug. 19, 2009) (Farnan, J.) (holding that the term "about" should be
given its ordinary and customary meaning because nothing in the specification alters this
understanding); *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005)
(holding "that the term 'about' should be given its ordinary and accepted meaning of
'approximately.'") Here, there is no indication in the '727 or '343 patent specifications that the
applicants chose to depart from the plain and ordinary meaning of this claim term.

– 4 –

We expect APP to argue that this term is indefinite. As previously stated and not to be repeated in its entirety, claim construction and a *Markman* hearing is not the time or place to be arguing validity issues. *See e.g., Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005). Moreover, contrary to APP's assertions, the use of the word "about" in the claims does not render the patent claims indefinite. The Federal Circuit has stated that "claim construction often poses a difficult task over which [reasonable minds] may disagree." *Halliburton Energy Servs. Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). Therefore, "[p]roof of indefiniteness requires such 'an exacting standard.'" *Id.* An accused infringer must thus demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art. *Id.* at 1249-50. In other words, a claim is only indefinite if it is "insolubly ambiguous." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). In this case, the applicants deliberately avoided a strict numerical boundary by choosing to use the word "about" in the claims. The term "about" is not insolubly ambiguous and is clearly amenable to construction as a matter of law. Therefore, it is <u>not</u> indefinite.

In any event, as explained in detail in The Medicines Company's Consolidated Answer To Defendants' Opening Claim Construction Brief, claim construction is not an appropriate time to assert arguments regarding indefiniteness and any attempt by APP to raise this issue during claim construction should be rejected in its entirety.[2] The Federal Circuit has instructed, on several occasions, that any arguments regarding invalidity and indefiniteness should be preceded

---

[2] Accordingly, The Medicines Company fully incorporates herein its arguments in response to APP's indefiniteness allegations as set forth in its Consolidated Answer to Defendants' Opening Claim Construction Brief. (D.I. 505 at 15-17).

by claim construction. *Datamize, LLC,* 417 F.3d 1347-48 (quoting *Exxon Research & Eng'g Co. v. United States,* 265 F.3d 1371, 1375 (Fed. Cir. 2001))..

### 4. About 2% total impurity level

| Term | Proposed Construction |
|---|---|
| about 2% [total impurity level] | Plain and ordinary meaning. This term is not indefinite. <br><br> Alternatively: Approximately 2%. |

Like the "about" 1% total impurities term, *supra* Sec. II.A.3, "about" 2% total impurity level should be afforded its plain and ordinary meaning and the use of the word "about" in this claim term does not render the claims indefinite.

### 5. A maximum total impurity level that does not exceed about 1% or 2% as measured by HPLC

| Term | Proposed Construction |
|---|---|
| a maximum total impurity level that does not exceed about 1% [or 2%] as measured by HPLC | An upper limitation of the combined total of all measurable impurities in the pharmaceutical batch(es) or the pharmaceutical formulation(s) that does not exceed about 1% [or 2%] as measured by HPLC. <br><br> This term is not indefinite. |

The Medicines Company's proposed construction of "a maximum total impurity level that does not exceed about 1% [or 2%] as measured by HPLC" comports with the Federal Circuit's guidelines on claim construction. The Medicines Company's proposed construction for this phrase is proper and should be adopted.

With respect to the first half of the disputed phrase ("a maximum total impurity level"), The Medicine Company's proposed construction is explained *supra.* First, the word "maximum" should be afforded its plain and ordinary meaning or, in the alternative, it should be construed to mean "upper limit." (D.I. 461 at 14-15). *Supra* Sec. II.A.2. Second, the specification defines "total impurity level" as "the combined total of all measurable impurities in the pharmaceutical

– 6 –

batch(es) or the pharmaceutical formulation(s)." *Supra* Sec. II.A.1. (D.I. 464, Ex. A at 12:52-55; D.I. 464, Ex. B at 12:52-55). Third, it would be improper to impose a strict numerical boundary in accordance with controlling legal standards construing claim limitations employing the modifying term "about." *Supra* Sec. II.A.3. Therefore, the term "about" 1% or 2% should be afforded its plain and ordinary meaning.

With respect to the remainder of the disputed phrase ("that does not exceed about 1% [or 2%] as measured by HPLC"), The Medicines Company has explained in its Opening Claim Construction Brief that the term "as measured by HPLC" should be afforded its plain and ordinary meaning. (D.I. 461 at 15-16). This term is plain and unambiguous on its face. The Court should adopt the plain and ordinary meaning because the claims disclose that levels of total impurities are measured as a percentage using high performance liquid chromatography ("HPLC"). (D.I. 464, Ex. A at 27:18-19; D.I. 464, Ex. B at 27:33-34). The specification recites that "[a]fter the pH-adjusting solution was completely added and mixed, the compounding solution was sterile filtered and lyophilized, and the lyophilizate was analyzed by HPLC for impurity levels." (D.I. 464, Ex. A at 21:67-22:3; D.I. 464, Ex. B at 22:45-48). Thus, the specification makes clear that measurements made using HPLC include an analysis for impurity levels in the finished bivalirudin drug product.

Again, we expect APP to argue that the phrase "as measured by HPLC" is indefinite. This phrase is not indefinite. (*See e.g., Nazomi Commc'ns,* 403 F.3d at 1369; *Datamize, LLC,* 417 F.3d at 1347-48). A person of ordinary skill in the art ("POSA") would know the standards or conditions for using HPLC to measure bivalirudin impurities. Even if a POSA would need to conduct some experimentation to determine the standards and conditions of HPLC to use, such experimentation would not render the claims indefinite. *Teva Pharms. USA, Inc. v. Sandoz Inc.,*

– 7 –

No. 08-7611, 2011 U.S. Dist. LEXIS 99056, at *47-50 (S.D.N.Y. Aug. 24, 2011) (order denying indefiniteness arguments).

Moreover, the issue of whether or not the phrase "as measured by HPLC" renders the claims indefinite was already considered during the prosecution of the patents-in-suit. The Patent Office issued rejections under 35 U.S.C. § 112 for indefiniteness during the prosecution of both the '727 and '343 patents. (*See* D.I. 513 at MEDCO4374052-4374080 at MEDCO4374078, April 29, 2009 Office Action ¶¶ 35-36; D.I. 514 at MEDCO4373073-102 at MEDCO4373098-099, May 29, 2009 Office Action ¶¶ 32-38). Specifically, the Patent Office rejected the claim phrase "are characterized by a maximum impurity level of Asp9-bivalirudin … as measured by HPLC" as indefinite. *Id.* These rejections were ultimately resolved during prosecution and the Patent Office allowed the claims. (*See* D.I. 513 at MEDCO4374387-91 at 91; D.I. 514 at MEDCO4373470-79). As set forth in *Teva,* "[i]n situations … where a patent examiner has specifically raised an indefiniteness objection and the issue has been resolved to the patent examiner's satisfaction, '[t]here is a heavy presumption against [a party] arguing that the patents and claims do not comply with 35 U.S.C. § 112.'" *Id.* at 37 (citation omitted) (emphasis added; brackets in original). Therefore, in this case, the patents-in-suit are presumptively valid over any indefiniteness arguments. Because the Patent Office had already raised indefiniteness objections during the prosecution of the patents-in-suit and the issue was resolved to the Patent Office's satisfaction, APP has a heavy burden to overcome in order to establish indefiniteness.

Accordingly, the term "a maximum total impurity level that does not exceed about 1% [or 2%] as measured by HPLC" is amenable to construction and should be afforded the Medicines Company's proposed construction for the preceding reasons.

### 6.    Reconstitution time

| Term | Proposed Construction |
|---|---|
| reconstitution time | The time required to prepare the pharmaceutical batch(es) or the pharmaceutical formulation(s) for use. |

The term "reconstitution time" is expressly defined in the specification. The specification clearly defines "reconstitution time" as "the time required to prepare the pharmaceutical batch(es) or the pharmaceutical formulation(s) for use." (D.I. 464, Ex. A at 12:56-58; D.I. 464, Ex. B at 12:56-58). As a matter of law, the specification "acts as a dictionary" when it defines terms used in the claim. *Vitronics,* 90 F.3d at 1582 (internal citation omitted). In this instance, "reconstitution time" is defined in the specification as "time required to prepare the pharmaceutical batch(es) or the pharmaceutical formulation(s) for use." (D.I. 464, Ex. A at 12:56-58; D.I. 464, Ex. B at 12:56-58).

The Court should follow the instructions of the Federal Circuit and adopt the definition set forth in the specification. *Vitronics,* 90 F.3d at 1584. There is nothing in the intrinsic evidence that suggests that any definition other than this should apply.

### 7.    About 42 seconds reconstitution time

| Term | Proposed Construction |
|---|---|
| about 42 seconds [reconstitution time] | Plain and ordinary meaning.  This term is not indefinite.<br><br>Alternatively:  Approximately |

Like the "about" 1% or 2% total impurities terms, *supra* Sec. II.A.3 and Sec. II.A.4, the claim term "about 42 seconds" reconstitution time should be afforded its plain and ordinary meaning. In view of the claim term "about", it would be improper to impose a strict numerical boundary in accordance with controlling legal standards. *Cohesive,* 543 F.3d at 1368. There is

– 9 –

no indication in the '727 or '343 patent specifications that the applicants chose to depart from the plain and ordinary meaning of this claim term.

Likewise, to the extent APP attempts to argue that this term is indefinite, The Medicines Company incorporates herein its previous and consistent arguments regarding indefiniteness, *supra* Sec. II.A.4, and The Medicines Company's Consolidated Answer To Defendants' Opening Claim Construction Brief. (D.I. 505 at 15-17). Again, indefiniteness is a validity issue that has no place in claim construction and *Markman* proceedings. In any event, the use of "about" in this claim term does not render the patents-in-suit indefinite. The word "about" was chosen by the applicants to avoid a strict numerical boundary and is amenable to construction. Furthermore, any arguments proposed by APP regarding indefiniteness are inappropriate at this juncture in the case. As set forth by the Federal Circuit, all claim construction issues must be resolved in advance of arguments related to invalidity and indefiniteness. *Datamize, LLC,* 417 F.3d at 1347-48.

## III.    CONCLUSION

For the foregoing reasons, all of The Medicines Company's proposed claim constructions for the supplemental claim terms of the '727 and '343 patents should be adopted by the Court in their entirety. Each proposed construction comports with the well-established guidelines by the Federal Circuit and is supported by the intrinsic evidence and/or the plain and ordinary meanings of the terms.

_/s/ Laura D. Hatcher_
Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
*Of Counsel*
Laura D. Hatcher (#5098)
hatcher@rlf.com
Edgar H. Haug
Richards, Layton & Finger P.A.
Porter F. Fleming
One Rodney Square
Angus Chen
P.O. Box 551
Frommer Lawrence & Haug LLP
Wilmington, DE 19899
745 Fifth Avenue
(302) 651-7700
New York, NY 10151
(212) 588-0800
*Attorneys for Plaintiff*
*The Medicines Company*
Dated:  October 7, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2011, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF. I further certify that copies of the foregoing were caused to be served on October 7, 2011, in the manner indicated to:

### VIA ELECTRONIC MAIL:

Elena C. Norman
Monté T. Squire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street
17th Floor
Wilmington, DE 19801

John C. Phillips, Jr.
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Richard K. Herrmann
Mary B. Matterer
Amy A. Quinlan
MorrisJames LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

William F. Long
Kristin E. Goran
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, GA 30309-3996

George C. Lombardi
Lynn MacDonald Ulrich
Ali I. Ahmed
Winston & Strawn LLP
35 West Wacker Drive

Emily A. Evans
Morrison & Forester LLP
755 Page Mill Road
Palo Alto, CA 94304-1018

*/s/ Laura D. Hatcher*
Laura D. Hatcher (#5098)
Hatcher@rlf.com