IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE MEDICINES COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TEVA PARENTERAL MEDICINES, INC., et al.<br><br>Defendants. | C.A. No. 09-750-ER<br><br>**(Consolidated)**<br><br>**REDACTED PUBLIC VERSION** |

**APP PHARMACEUTICALS, LLC AND APP PHARMACEUTICALS, INC.'S
OPENING BRIEF REGARDING ADDITIONAL CLAIM CONSTRUCTION
PROPOSED BY THE MEDICINES COMPANY**

OF COUNSEL
MORRISON & FOERSTER LLP

Emily A. Evans (*pro hac vice*)
Eric C. Pai (*pro hac vice*)
Christopher Robinson (*pro hac vice*)
Cecilia Ziniti (*pro hac vice*)
755 Page Mill Road
Palo Alto, California  94304-1018
(650) 813-5600
eevans@mofo.com
epai@mofo.com
christopherrobinson@mofo.com
cziniti@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-5029
enorman@ycst.com
msquire@ycst.com

*Attorneys for Defendants and Counterclaim
Plaintiffs APP Pharmaceuticals, LLC and
APP Pharmaceuticals, Inc.*

Dated: October 7, 2011

Redacted Version: October 14, 2011

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 1

ARGUMENT ................................................................................................................... 4

I.      NO ADDITIONAL CLAIM CONSTRUCTION IS NECESSARY ................................ 4

        A.      "About 42 seconds" ....................................................................................... 4

        B.      "Reconstitution time"..................................................................................... 5

        C.      "About 1%" and "about 2%" ......................................................................... 6

        D.      "Total impurity level"..................................................................................... 7

        E.      "A maximum total impurity level" ................................................................ 8

        F.      "A maximum total impurity level that does not exceed about 1% or 2% as
                measured by HPLC" ....................................................................................... 8

II.     THE COURT LACKS JURISDICTION TO DETERMINE WHETHER
        MEDCO'S UNASSERTED CLAIMS ARE INDEFINITE ............................................. 9

CONCLUSION................................................................................................................ 9

YCST01:11494761.1

068907.1001

## TABLE OF AUTHORITIES

Page

**CASES**

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*,
  268 F.3d 1352 (Fed. Cir. 2001)..................................................................................................4

*Halliburton Energy Servs., Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008)..................................................................................................9

*In re Katz Interactive Call Processing Patent Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011)...............................................................................................5, 7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc).................................................................................6

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997)..................................................................................................4

**STATUTES**

35 U.S.C. § 112...............................................................................................................................9

## INTRODUCTION

MedCo proposes that the Court construe seven additional terms found only in claims that MedCo does not assert are infringed by APP. MedCo contends that construction of these additional claim terms is relevant to inequitable conduct. But the Court does not need to construe these terms to determine whether                    and the named inventors[1] committed inequitable conduct. No reasonable construction of these terms would permit a benign interpretation of MedCo's misrepresentations to the Patent Office regarding the '727 and '343 patents.

To the extent that any construction is appropriate, it is sufficient that the meaning of these terms in the claims include the meaning of these terms as used in Examples 4 and 5 of the '343 and '727 patents. A comprehensive analysis of exactly what each term means is irrelevant to the inequitable conduct issues here. The Court should decline to engage in an unnecessary exercise that will not resolve any disputes in this case.

Indeed, MedCo's proposed constructions of the additional terms are vague and unhelpful for resolving the issue of inequitable conduct. For example, MedCo's proposed construction of "reconstitution time" as "[t]ime required to prepare the pharmaceutical batch(es) or the pharmaceutical formulation(s) for use" explains neither what "reconstitution" means nor how "time" is measured.

The Court should also decline to consider MedCo's arguments that some of the additional terms do not render the claims invalid as indefinite. The indefiniteness of the claims that MedCo has not asserted against APP is not at issue here. Indeed, the Court has already held that it does not have jurisdiction to consider the validity or invalidity of these unasserted claims.

## BACKGROUND

MedCo's proposed additional claim terms appear only in claims of the '343 and '727 patents that MedCo has not asserted against APP. MedCo represented unequivocally to this

[1]

Court that there is no case or controversy with APP as to these unasserted patent claims, and there never will be. (D.I. 319, at 2; D.I. 364, at 1-3.) As a result, the Court ruled that it lacked jurisdiction over APP's invalidity counterclaims with respect to MedCo's unasserted claims. (D.I. 377, at 2 n.1.) The unasserted claims are now relevant to the case solely because of APP's inequitable conduct allegations. (*Id.*)

APP has identified ▮▮▮▮▮ of inequitable conduct based on discovery and fact investigation to date. For the Court's reference, APP has included the most recent statement of its inequitable conduct contentions with this brief. (Declaration of Eric C. Pai ("Pai Decl.") Ex. A at 3-56.) APP does not believe that any of its inequitable conduct theories requires the additional claim construction MedCo has proposed. Indeed, MedCo has offered no explanation of how its proposed additional terms bear any relation to APP's inequitable conduct allegations. The only theory that even pertains to reconstitution times and total impurity levels is APP's contention that MedCo misrepresented the experimental results from its allegedly "new" process for making pharmaceutical batches. (*Id.* at 25-37.) APP briefly summarizes this inequitable conduct contention below.

MedCo repeatedly and unequivocally misrepresented to the Patent Office that ***all potential batches*** made by the "new" process have a maximum impurity level of $Asp^9$-bivalirudin that does not exceed about 0.6%, a maximum total impurity level that does not exceed about 2%, and a maximum reconstitution time that does not exceed about 42 seconds. (*Id.* at 25, 27-28.) MedCo's Angiomax® release test data generated prior to the issuance of the patents-in-suit directly contradicted these representations to the Patent Office. (*Id.* at 25, 28-29.) At the same time it was making these statements to the Patent Office, MedCo was in possession of release test data from Angiomax® pharmaceutical batches made by the "new" process showing $Asp^9$-bivalirudin levels, total impurity levels, and reconstitution times that ***exceeded*** the maximum impurity levels and reconstitution times recited in the claims of the patents-in-suit:

2



(*Id.* at 28-29.) This release test data directly contradicted MedCo's representations to the Patent Office that ***all batches*** made by the "new" compounding process have the claimed maximum impurity levels and reconstitution times. (*Id.*)

These experimental results were never submitted to the Patent Office. Nor were they disclosed in the '343 and '727 patents. Examples 4 and 5 of the specification purport to list data on total impurities and reconstitution times. ('343 patent col. 22:21-25:3; '727 patent col. 21:44-24:35.) Indeed, the maximums listed in Table 7 of Example 5 are the source of the values for total impurities and reconstitution time recited in the claims:

TABLE 7

| Characteristics of the batches generated by the compounding process that features addition of a pH-adjusting solution at a constant rate with efficient mixing. | | | |
|---|---|---|---|
| | No. of batches | Mean ± SD | Maximum |
| $Asp^9$-bivalirudin (%) | 24 | 0.3 ± 0.1 | 0.6 |
| Total impurities (%) | 24 | 1.0 ± 0.4 | 2.0 |
| Largest unknown impurity (%) | 24 | 0.2 ± 0.1 | 0.3 |
| Reconstitution time (seconds) | 24 | 18 ± 6 | 42 |

('343 patent col. 23:41-52; '727 patent col. 23:1-13 (highlighting added).)

3

### ARGUMENT

### I.    NO ADDITIONAL CLAIM CONSTRUCTION IS NECESSARY

The Court is not required to construe every term in the patent claims. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Claim construction "is not an obligatory exercise in redundancy." *Id.* It is necessary only "when the meaning or scope of technical terms and words of art is unclear and in dispute and requires resolution in order to determine" a disputed issue in the case, such as infringement or obviousness. *Id.*

Put another way, the Court need only construe the patent claims to the extent necessary to resolve the issues before it. *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001). A court need not comprehensively construe the claims before addressing the issues in dispute. *Id.* In *Ballard*, the district court did not provide specific constructions for any particular terms or phrases in the patent claims. *Id.* Instead, the district court simply concluded that that the patent claims had to "be construed to exclude catheter systems having a valve structure of the sort used in the accused Sorenson device." *Id.* The Federal Circuit held that this approach was proper because it was sufficient to resolve the issue before the court: whether the accused device was infringing. *Id.*

Here, the Court does not need to construe MedCo's additional terms to resolve the issue of inequitable conduct. As discussed below, there is no reasonable construction of these terms that would allow MedCo to avoid the conclusion that its misrepresentations to the Patent Office regarding experimental results were material. MedCo's proposed constructions do not avoid this conclusion, and they are not helpful for resolving any disputes over inequitable conduct. If the Court determines that any construction would be helpful, it is sufficient that the meaning of the terms in the claims include the meaning of the terms as used in the patents' own examples.

### A.    "About 42 seconds"

The parties appear to agree that "about 42 seconds" does not require construction. MedCo concedes that this term can simply be given its plain and ordinary meaning. (D.I. 563, Ex. E at 1.) No construction is necessary to determine APP's inequitable conduct claims.

MedCo's release test data from pharmaceutical batches made by the "new" process included ███

████████████████████████████████████████████████████████████ (Pai Decl.

Ex. A at 28-29.) ████████████████████████████████████████

████████████████

MedCo's alternative construction of this term as "[a]pproximately 42 seconds" does nothing to clarify its meaning or resolve any disputes as to inequitable conduct. If the words "about" and "approximately" have the same meaning, MedCo's construction is an unhelpful and unnecessary restatement. If these words are somehow different in scope, then MedCo's construction should be rejected as an attempt to redraft the claims.

### B. "Reconstitution time"

No construction of "reconstitution time" is necessary to determine whether MedCo committed inequitable conduct. Indeed, there is no reasonable construction that would permit a benign interpretation of MedCo's misrepresentations of its release test data on reconstitution times and its failure to submit data showing reconstitution times exceeding the maximums claimed in the patents. As discussed above, MedCo represented to the Patent Office that the reconstitution times for batches made by its "new" process do not exceed about 42 seconds, when in fact MedCo had release test data showing reconstitution times ████████████

████████████████

To the extent that the Court finds a construction helpful for this determination, it is sufficient that the meaning of "reconstitution time" in the claims include the meaning of "reconstitution time" as used in Examples 4 and 5 of the '343 and '727 patents. This meaning is enough to determine the materiality of MedCo's misrepresentations regarding reconstitution times. The broadest reasonable construction of "reconstitution time" must include the meaning of the term as used in Examples 4 and 5. First, whatever else "reconstitution time" means, it should not exclude the meaning of the term as used in the patents' own examples of the claimed invention. *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) ("[T]here is a strong presumption against a claim construction that excludes a disclosed

5

embodiment.") (citing *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005)). Second, the data in the examples demonstrate that MedCo used the term "reconstitution time" consistently in the claims and the examples. *See also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("[C]laim terms are normally used consistently throughout the patent."). Specifically, the maximum reconstitution time of 42 seconds listed in Table 7 of Example 5 is the source of the "maximum reconstitution time that does not exceed about 42 seconds" limitation in the claims. ('343 patent claims 12, 19; '727 patent claims 11, 19.)

To be clear, APP does *not* contend that the meaning of "reconstitution time" must be narrowly limited to the meaning of the term as used in the examples. On an appropriate set of facts and issues in dispute, another court could attempt to define more comprehensively and precisely what the term means to a person of ordinary skill in the art. This is not that case. Here, the exact definition is irrelevant to inequitable conduct or any other issue. As in *Ballard*, this Court does not need to define exactly what "reconstitution time" means.

MedCo's proposed construction, "[t]ime required to prepare the pharmaceutical batch(es) or the pharmaceutical formulation(s) for use," is vague, incomplete, and unhelpful. It does not specify, for example, the starting and ending points between which time is measured. It does not explain what "reconstitution" is. MedCo's construction would not help the Court determine whether MedCo committed inequitable conduct.

### C.      "About 1%" and "about 2%"

MedCo concedes that these terms, too, do not require construction and can be given their plain and ordinary meaning. (D.I. 563, Ex. E at 1.)  APP agrees that no construction is necessary. The release test data for pharmaceutical batches made by the "new" process show ███ ██████████████████████████████████████████████ exceeding the claimed maximums of "about 0.5%," "about 1%," and "about 2%." (Pai Decl. Ex. A at 29-30.)  As discussed above, MedCo's alternative construction substituting "approximately" for "about" is unhelpful and unnecessary.

To the extent that the Court finds any construction of these terms helpful, APP submits that the Court need only determine that the meaning of "%" in the claims is the same as the meaning of "%" in the tables of Examples 4 and 5. Notwithstanding MedCo's failure to disclose how these percentages were calculated and what they represent, the data demonstrate that MedCo used the term "%" consistently in the claims and the tables of Example 4 and 5. For example, the maximum total impurities of 2.0% listed in Table 7 of Example 5 is the source of the "maximum total impurity level that does not exceed about 2%" limitation in the claims. ('343 patent claims 4, 12, 19; '727 patent claims 4, 11, 19.)

### D.    "Total impurity level"

No construction of this term is necessary to determine whether MedCo committed inequitable conduct. There is no reasonable construction that would permit a benign interpretation of MedCo's misrepresentations of its release test data on total impurity levels and its failure to submit data showing total impurity levels exceeding the maximums claimed in the patents. As discussed above, MedCo represented to the Patent Office that the total impurities for batches made by its "new" process do not exceed about 2%, when in fact MedCo had release test data it did not share with the Patent Office showing total impurities of 

To the extent that the Court finds a construction of this term helpful, it is sufficient that the meaning of "total impurity level" in the claims include the meaning of "total impurities" as used in Examples 4 and 5 of the '343 and '727 patents. This meaning is sufficient to determine the materiality of MedCo's misrepresentations. The broadest reasonable construction of "total impurity level" must include this meaning. Regardless of what else "total impurity level" means, it should not be construed to exclude the patents' own examples of the claimed invention. *In re Katz*, 639 F.3d at 1324. The data in the examples demonstrate that MedCo used "total impurity level" in the claims consistently with "total impurities" in the examples. For example, the maximum total impurities of 2.0% listed in Table 7 of Example 5 is the source of the "maximum total impurity level that does not exceed about 2%" limitation in the claims. ('343 patent claims 4, 12, 19; '727 patent claims 4, 11, 19.)

7

MedCo's proposed construction, "[t]he combined total of all measurable impurities in the pharmaceutical batch(es) or the pharmaceutical formulation(s)," is vague and unhelpful. It does not specify how to measure impurities, which calls into question what impurities are "measurable" and what impurities are not. It does not explain how to calculate each impurity or the "combined total" of all impurities. It raises more questions than it answers, without providing any guidance on the only relevant question of whether MedCo committed inequitable conduct.

### E.    "A maximum total impurity level"

This phrase does not present any new terms that need construction. APP has discussed the meaning of "total impurity level" in the preceding section above. APP agrees that the term "maximum" should be construed, but the parties already addressed its construction in their earlier *Markman* briefing. Indeed, MedCo's proposed construction of "a maximum total impurity level" uses the same construction of "maximum" that MedCo previously proposed. (MedCo's Op. Claim Constr. Br., D.I. 461, at 14-15 (proposing that "maximum" be construed as "[u]pper limit").) For the reasons discussed in APP's earlier briefing, "maximum" should be construed as "the highest level that has been or can be attained." (APP's Op. Claim Constr. Br., D.I. 459, at 12; APP's Resp. Claim Constr. Br., D.I. 504, at 10.)

### F.    "A maximum total impurity level that does not exceed about 1% or 2% as measured by HPLC"

This phrase combines the previous three terms, and is therefore largely redundant. APP has discussed the meaning of those terms in the sections above. The only additional language in this phrase is the term "as measured by HPLC." It is unclear why MedCo included this term, as its proposed construction merely restates the words. APP believes that no construction is necessary to resolve the issue of inequitable conduct. Materiality is based on MedCo's misrepresentations of experimental results with respect to total impurity levels; it does not matter how those total impurity levels were measured.

YCST01:11494761.1                                                                     068907.1001

If the Court finds that construing this term is helpful, APP submits that the Court need only determine that "as measured by HPLC" has the same meaning as "analyzed by HPLC for impurity levels" in Examples 4 and 5. Although MedCo did not disclose the methods and conditions for performing HPLC, the same undisclosed HPLC methods and conditions should apply to the claims and the examples. Indeed, MedCo itself cited the HPLC analysis in the Example 4 as support for the meaning of "% as measured by HPLC." (MedCo's Op. Claim Constr. Br., D.I. 461, at 16 (citing '727 patent col. 21:67-22:3; '343 patent col. 22:45-48).)

## II.     THE COURT LACKS JURISDICTION TO DETERMINE WHETHER MEDCO'S UNASSERTED CLAIMS ARE INDEFINITE

MedCo asserts that several of its proposed additional claim terms do not render the claims invalid as indefinite. The Court already held, however, that it lacks subject matter jurisdiction to decide this issue. Indefiniteness is a determination of the validity or invalidity of a patent claim. *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1246 (Fed. Cir. 2008) (affirming judgment that claims were invalid as indefinite under 35 U.S.C. § 112). Based on MedCo's unequivocal representations that there is no case or controversy, the Court ruled that it lacked jurisdiction over APP's invalidity counterclaims with respect to MedCo's unasserted claims. (D.I. 377, at 2 n.1.) MedCo's proposed additional terms appears only in the unasserted claims. As such, the Court does not have jurisdiction to determine whether these terms render the claims indefinite.

## CONCLUSION

APP respectfully submits that the Court need not construe MedCo's additional claim terms to determine whether MedCo committed inequitable conduct (or for any other reason). In any event, MedCo's vague proposed constructions of those terms clarify nothing. To the extent that the Court finds it helpful to construe the terms, APP respectfully requests that the Court adopt APP's proposed constructions.

9

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Elena C. Norman*
Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-5029
Facsimile: (302) 571-1253
enorman@ycst.com
msquire@ycst.com

*Attorneys for Defendants and*
*Counterclaim Plaintiffs APP*
*Pharmaceuticals, LLC and APP*
*Pharmaceuticals, Inc.*

OF COUNSEL

MORRISON & FOERSTER LLP

Emily A. Evans (*pro hac vice*)
Eric C. Pai (*pro hac vice*)
Christopher Robinson (*pro hac vice*)
Cecilia Ziniti (*pro hac vice*)
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
eevans@mofo.com
epai@mofo.com
christopherrobinson@mofo.com
cziniti@mofo.com

Dated: October 7, 2011

10

## CERTIFICATE OF SERVICE

I, Monté T. Squire, Esquire, hereby certify that on October 14, 2011, I caused to

be electronically filed a true and correct copy of the foregoing document with the Clerk of the

Court using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

Frederick L. Cottrell, III, Esquire
Laura D. Hatcher, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
*cottrell@rlf.com*
*hatcher@rlf.com*

*Attorneys for Plaintiff*

John C. Phillips, Jr. , Esquire
Megan C. Haney, Esquire
Phillips Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806
*jcp@pgslaw.com*
*mch@pgslaw.com*

*Attorneys for Defendants Teva Parenteral
Medicines Inc., Teva Pharmaceuticals Industries Ltd.,
PLIVA d.d., PLIVA-HRVATSKA d.o.o., Teva
Pharmaceuticals USA, Inc. and Barr Laboratories, Inc.*

Richard K. Herrmann, Esquire
Morris James, LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
*rherrmann@morrisjames.com*

*Attorneys for Defendant Hospira Inc.*

I further certify that on October 14, 2011**,** I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record, and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

Edgar H. Haug, Esquire
Porter F. Fleming, Esquire
Angus Chen, Esquire
Mark P. Walters, Esquire
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY  10151
*ehaug@flhlaw.com*
*pfleming@flhlaw.com*
*achen@flhlaw.com*
*mwalters@flhlaw.com*

*Attorneys for Plaintiff*

George C. Lombardi, Esquire
Lynn MacDonald Ulrich, Esquire
Trang Hoang, Esquire
Julia Mano Johnson, Esquire
Maureen Rurka, Esquire
Ivan M. Poullaos, Esquire
Christopher B. Essig, Esquire
Sara E. Gilloon, Esquire
Samantha L. Maxfield, Esquire
Winston Strawn LLP
35 W. Wacker Drive
Chicago, IL  60601-9703
*glombardi@winston.com*
*lulrich@winston.com*
*thoang@winston.com*
*jmjohnson@winston.com*
*mrurka@winston.com*
*ipoullaos@winston.com*
*cessig@winston.com*
*sgilloon@winston.com*
*smaxfield@winston.com*
*Attorneys for Defendants Teva Parenteral*
*Medicines Inc., Teva Pharmaceuticals Industries Ltd.,*
*PLIVA d.d., PLIVA-HRVATSKA d.o.o., Teva*

*Pharmaceuticals USA, Inc. and Barr Laboratories, Inc.,*
*Barr Pharmaceuticals LLC*


William F. Long, Esquire
Kristin E. Goran, Esquire
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, GA  30309-3996
*bill.long@sutherland.com*
*kristin.goran@sutherland.com*

*Attorneys for Defendant Hospira Inc.*

                              YOUNG CONAWAY STARGATT
                               &  TAYLOR, LLP

                              /s/ *Monté T. Squire*
                              Elena C. Norman (No. 4780)
                              Monté T. Squire (No. 4764)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware  19801
                              (302) 571-6600
                              *enorman@ycst.com*
                              *msquire@ycst.com*


                              *Attorneys for Defendants APP Pharmaceuticals,*
                              *Inc. and APP Pharmaceuticals LLC*

Dated: October 14, 2011

01: 10406771.1

068907.1001